STATE of Missouri, Respondent,

v.

David Bryan MILLER, Appellant.

No. SC 91948.

Supreme Court of Missouri,
En Banc.

July 3, 2012.

Rehearing or Rehearing En Banc
Denied Aug. 14, 2012.

456

Shaun J. Mackelprang, Attorney General's Office, Jefferson City, for respondent.

Kent E. Gipson, Law Office of Kent Gipson LLC, Kansas City, for appellant.

ZEL M. FISCHER, Judge.

## Procedural History

David Bryan Miller was convicted of six sexual offenses against his minor daughter and was sentenced to concurrent terms of imprisonment of 50 years, 10 years, seven

years, four years, five years, and four years.

Miller appeals the circuit court's decision overruling his motion for judgment of acquittal. He argues that the evidence was legally insufficient to support his convictions of first-degree statutory sodomy, deviate sexual assault, sexual misconduct involving a child, and endangering the welfare of a child in the first degree because the state failed to present any evidence to support essential elements of the offenses as charged in the information and submitted to the jury in Instruction Nos. 7, 9, 10, and 12. Miller argues that the circuit court committed plain error in submitting Instruction No. 8, which was the verdict directing instruction for the class B felony of first-degree child molestation. Miller next argues that the circuit court committed error in failing to declare a mistrial, *sua sponte*, because the State introduced evidence of his post-arrest silence at trial, by precluding a witness for the defense as a sanction for untimely endorsement, and in allowing evidence of uncharged bad acts into evidence at trial. Miller also argues that the circuit court erred in allowing argument of facts not in evidence at trial and that the circuit court erred in failing to sustain his motion for new trial because the cumulative effect of the errors at trial so infected the proceedings with unfairness that justice demands he receive a second trial. This Court granted transfer after opinion by the court of appeals and, therefore, has jurisdiction over this appeal pursuant to article V, section 10, of the Missouri Constitution.

This Court reverses the judgment with respect to Miller's convictions for first-degree statutory sodomy, deviate sexual assault, and first-degree child molestation. In all other respects, the judgment is affirmed. The case is remanded.

## Facts

In late December 2005, Miller's 14-year-old daughter, E.N.M., informed a friend that her father had been abusing her sexually since she was 6 years old. The friend told her mother, who, in turn, informed E.N.M.'s mother as to what E.N.M. had said. E.N.M. was taken to the police station where E.N.M. informed officers that she had been abused sexually by Miller at Miller's farm house in Hatfield from the time she was 6 years old. On January 31, 2006, sheriff's deputies served an order of protection on Miller at his Hatfield home. Miller gave the deputies permission to search the home. When the deputies asked Miller if he had any condoms, Miller retrieved a box of condoms from under the bathroom sink. At some point, a deputy provided Miller with *Miranda* warnings, and Miller indicated he understood those warnings. After discussing the order of protection with Miller for a while, the deputies asked Miller to come to the police station for an interview.

After they arrived at the station, a deputy again provided Miller with *Miranda* warnings, and Miller signed a *Miranda* form. Miller denied the allegations and indicated that he thought his ex-wife had put his daughter up to making those allegations.

Miller was charged with 10 counts alleging that he sexually molested, raped, and sodomized his natural daughter, E.N.M., over an eight-year period between December 3, 1997, and January 22, 2006, at the Miller's family residence in Harrison County. Count I charged Miller with the class C felony of statutory rape in the second degree, in violation of § 566.034,[1] alleging that Miller had sexual intercourse with his daughter between January 21,

---

1. All statutory references are to RSMo 2000 unless otherwise noted.

2006, and January 22, 2006, when E.N.M. was younger than 17 years old; count II charged Miller with the class C felony of sexual assault in violation of § 566.040, alleging that Miller had sexual intercourse with his daughter between January 21, 2006, and January 22, 2006, without her consent; count III charged Miller with the unclassified felony of statutory sodomy in the first degree in violation of § 566.062, alleging that Miller had deviate sexual intercourse with his daughter between December 3, 2004, and December 3, 2005, at a time when E.N.M. was younger than 14 years of age; count IV charged Miller with the class B felony of first-degree child molestation in violation of § 566.067, RSMo 1994, alleging that Miller subjected his daughter to sexual contact between December 3, 1997, and December 3, 1998, when she was younger than 14 years of age; count V charged Miller with the class C felony of deviate sexual assault in violation of § 566.070, alleging that Miller had deviate sexual intercourse with his daughter between December 3, 2004, and December 3, 2005, without her consent; under count VI, Miller was charged with the class D felony of sexual misconduct involving a child in violation of § 566.083, alleging that Miller knowingly exposed his genitals to his daughter between December 3, 1997, and December 3, 1998, when she was younger than 14 years of age, for the purpose of arousing or gratifying the sexual desire of any person; count VII charged Miller with the class D felony of incest in violation of § 568.020, which alleged that between January 21, 2006, and January 22, 2006, Miller had sexual intercourse with his daughter, who was his descendant by blood; count VIII charged Miller with the class C felony of endangering the welfare of a child in the first degree in violation of § 568.045, RSMo Supp.2003 and Supp. 2005,[2] alleging that between December 3, 2004, and December 3, 2005, Miller engaged in sexual contact with his daughter, who was younger than 17 years of age and over whom Miller was a parent; count IX charged Miller with the class D felony of incest in violation of § 568.020, alleging that between December 3, 2004, and December 3, 2005, Miller engaged in sexual intercourse with his daughter, whom Miller knew to be his descendant by blood; count X charged Miller with the unclassified felony of first-degree statutory rape in violation of § 566.032, alleging that Miller had sexual intercourse with his daughter between January 30, 2004, and January 31, 2005, when his daughter was younger than 14 years of age.

Miller pleaded not guilty. The case proceeded to a jury trial, and the jury returned verdicts finding Miller not guilty under counts I, II, VII and X. The jury found Miller guilty as charged under counts III, IV, V, VI, VIII, and IX. Miller was sentenced to concurrent terms of imprisonment of 50 years on count III, 10 years on count IV, seven years on count V, four years on count VI, five years on count VIII, and four years on count IX.

## SUFFICIENCY OF THE EVIDENCE TO PROVE THE CHARGES INCLUDED IN THE INFORMATION AND INSTRUCTION NOS. 7, 9, 10, and 12

Miller challenges the sufficiency of the evidence to support his convictions for first-degree statutory sodomy, deviate sexual assault, sexual misconduct involving a

2. The statutory definition of "first degree endangering the welfare of a child," § 568.045, changed during the charged time period of December 3, 2004, to December 3, 2005. The only change to the statute involved subsection 1, subdivision (5), which is not at issue in this case as Miller was charged under subsection 1, subdivision (2).

child, and first-degree endangerment of the welfare of a child.

ing a child and first-degree endangerment of a child.

## Standard of Review

 "This Court's review is limited to determining whether there was sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Letica,* 356 S.W.3d 157, 166 (Mo. banc 2011). "The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *State v. Belton,* 153 S.W.3d 307, 309 (Mo. banc 2005). "This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt." *State v. Nash,* 339 S.W.3d 500, 509 (Mo. banc 2011) (internal quotations and citations omitted). When reviewing the sufficiency of evidence supporting a criminal conviction, the Court does not act as a 'super juror' with veto powers. *State v. Grim,* 854 S.W.2d 403, 414 (Mo. banc 1993). In such cases, this Court gives great deference to the trier of fact. *Id.*

Miller argues that the State failed to prove that he engaged in first-degree statutory sodomy and deviate sexual assault because there was no evidence that he committed these crimes consistent with the dates alleged in both the information setting forth the charges and the jury instructions. Miller also argues that, because of a discrepancy in dates included in the information and jury instructions, the evidence adduced at trial was insufficient to convict him of sexual misconduct involv-

## Evidence of First–Degree Statutory Sodomy and Deviate Sexual Assault at Trial

The information charging Miller with counts III and V, first-degree statutory sodomy and deviate sexual assault, respectively, alleged that Miller inserted his finger into E.N.M.'s vagina between December 3, 2004, and December 3, 2005. Miller admits that there was evidence presented at trial that he did so when E.N.M. was 7 years old, between December 3, 1998, and December 3, 1999, but he argues that there was no evidence presented at trial to prove he did so during the dates for which he actually was charged. The verdict directing jury instructions, Instruction Nos. 7 and 9, also set forth December 3, 2004, and December 3, 2005, as the relevant dates the crimes were alleged to have occurred.

Instruction No. 7 read as follows:

As to Count 3, if you find and believe from the Evidence beyond a reasonable doubt:

First, that *between December 3, 2004 and December 3, 2005,* in the County of Harrison, State of Missouri, the defendant put his finger in E.N.M.'s vagina, and

Second, that such conduct constituted deviate sexual intercourse, and

Third, that at that time E.N.M. was less than fourteen years old, then you will find the defendant guilty under Count 3 of statutory sodomy in the first degree under this instruction.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction, the term "deviate sexual intercourse" means any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person.

(Emphasis added). Instruction No. 9 read:

As to Count 5, if you find and believe from the evidence beyond a reasonable doubt:

First, that *between December 3, 2004 and December 3, 2005,* in the County of Harrison, State of Missouri, the defendant put his finger in E.N.M.'s vagina, and

Second, that such conduct constituted deviate sexual intercourse, and

Third, that defendant did so without the consent of E.N.M., and

Fourth, that defendant knew he did not have the consent of E.N.M., then you will find the defendant guilty under Count 5 of deviate sexual assault.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction, the term "deviate sexual intercourse" means any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person.

(Emphasis added).

The State argues that evidence presented proved that Miller inserted his finger into E.N.M.'s vagina when E.N.M. was 7, thereby proving E.N.M. was younger than 14 years old for statutory sodomy, § 566.062, and that Miller knowingly did so without E.N.M.'s consent for deviate sexual assault, § 566.070. This was sufficient for conviction without the State having to prove the dates upon which the acts were committed, the State contends, even when the charging document and jury instructions set forth dates different from the dates supported by the evidence at trial. The State argues that time is not an essential element of the crime. The State further argues that because E.N.M. was well within the age limitation period of 14 years when the evidence showed Miller to have committed the essential elements of the crimes of first-degree statutory sodomy and deviate sexual assault, the evidence was sufficient to convict Miller despite the disparity in the dates listed in the information and jury instructions and the dates coinciding with the evidence adduced at trial.

 Time is not essential in child sexual abuse cases because it can be impossible to ascertain specific dates of the sexual abuse. *See State v. Gaines,* 316 S.W.3d 440, 454 (Mo.App.2010); *State v. Sprinkle,* 122 S.W.3d 652, 660 (Mo.App.2003); *State v. Ellis,* 820 S.W.2d 699, 701 (Mo.App. 1991); *State v. Hoban,* 738 S.W.2d 536, 539–41 (Mo.App.1987). Section 545.030 states, "[N]o indictment or information shall be deemed invalid, nor shall the trial, judgment or other proceedings thereon be stayed, arrested or in any manner affected" "[f]or omitting to state the time at which the offense was committed, in any case where time is not of the essence of the offense...." However, "even though the exact date of a charged offense is not an element of the crime, the indictment or information must allege the time of the

alleged offense with reasonable particularity; that is, it must be specific enough to ensure notice to the defendant, assurance against double jeopardy, and reliability of a unanimous verdict." 41 AM JUR. 2D *Indictments and Information* § 128. "When the issue is raised for the first time after verdict, the indictment or information will be deemed insufficient only if it is so defective that (1) it does not by any reasonable construction charge the offense of which the defendant was convicted or (2) the substantial rights of the defendant to prepare a defense and plead former jeopardy in the event of acquittal are prejudiced." [3] *State v. Parkhurst,* 845 S.W.2d 31, 35 (Mo. banc 1992).

This Court has ruled previously that a time element, as included in a jury instruction in a sexual abuse case, may not be so overbroad as to nullify a criminal defendant's alibi defense. *See State v. Bowles,* 360 S.W.2d 706, 709 (Mo.1962); *but see State v. Hoban,* 738 S.W.2d 536, 542 (Mo.App.1987) (holding that "[t]he more prudent approach would not allow lack of specificity on the part of the State, where it is impossible for the State to be more precise, to act as an absolute bar to prosecution."). This Court also has dealt with the time element included in a jury instruction in sexual abuse cases as it pertains to the defendant's right to a unanimous jury verdict.[4] Rule 23.01(b)(3) requires that the indictment or information "[s]tate the date and place of the offense charged as definitely as can be done. If multiple counts charge the same offense on the same date or during the same time period, additional facts or details to distinguish the counts shall be stated[.]"

This Court recognizes it is sometimes difficult for the State to allege and prove precisely when a crime occurred in child sex abuse cases. Prior case law in Missouri indicates that "the state is not confined in its evidence to the precise date stated in the information, but may prove the offense to have been committed on any day before the date of the information and within the period of limitation." *See, e.g., State v. Bunch,* 289 S.W.3d 701, 703 (Mo. App.2009) (quoting *State v. Mills,* 872 S.W.2d 875, 878 (Mo.App.1994)). However, when the State chooses to file an information and submit parallel jury instructions that purport to charge the defendant with specific conduct during a specific period of time, the State should not be permitted to secure a conviction with respect to specific conduct occurring during a broadly stated yet substantially different period of time from that stated in the information and instruction. This would not provide the defendant with adequate notice of the evidence that the State intends to present at trial. *See, e.g. State v. Wade,* 306 S.C. 79, 409 S.E.2d 780, 784 (1991) (the State should "not be allowed to prove a different date. than that set forth in the indictment ... unless the defendant is held to have had knowledge that the State would attempt to prove a different date upon tri-

---

3. On appeal, Miller does not challenge the sufficiency of the information. His challenge on appeal is solely that the evidence was insufficient to find him guilty of the crime charged beyond a reasonable doubt.

4. *See, e.g., State v. Celis–Garcia,* 344 S.W.3d 150 (Mo. banc 2011) (it was a violation of the defendant's right to a unanimous jury verdict for the circuit court to instruct the jury in such a way that the jury was not required to unanimously agree on the same criminal act to serve as the basis for the defendant's conviction; the defendant was charged with one general count of statutory sodomy, and the state presented evidence of multiple, separate instances of defendant's alleged conduct, any one of which would have supported a conviction).

al.").[5]

Appellate courts in previous cases have held that periods of time ranging anywhere from a 24–day period to a span of four years and six months were sufficient for notice and due process purposes. *Sprinkle,* 122 S.W.3d at 659 (indictment covered span of about three months); *State v. Weiler,* 801 S.W.2d 417, 418 (Mo. App.1990) (four and a half months); *State v. Brass,* 781 S.W.2d 565, 566 (Mo.App. 1989) (four years and six months); *State v. Burch,* 740 S.W.2d 293, 296 (Mo.App.1987) (eight months); *State v. Moesch,* 738 S.W.2d 585, 586 (Mo.App.1987) (three months); *State v. Woods,* 723 S.W.2d 488, 503 (Mo.App.1986) (24 days); *State v. Edwards,* 657 S.W.2d 343, 345 (Mo.App.1983) (30 days); *State v. Allen,* 622 S.W.2d 275, 276 (Mo.App.1981) (six months); *State v. Murray,* 609 S.W.2d 192, 196 (Mo.App. 1980) (eight months); *State v. Healey,* 562 S.W.2d 118, 130 (Mo.App.1978) (three months).

▇▇▇ A charging document satisfies the guarantees of the Fifth and Sixth Amendments "if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) (internal citations omitted). "Every information or indictment puts the defendant on notice, for due process purposes, of all offenses included in the offense charged." *State v. Hibler,* 5 S.W.3d 147, 150 (Mo. banc 1999). A criminal defendant, "as a matter of due process, is entitled to notice of the charges against him and may not be convicted of any offense of which the information or indictment does not give him fair notice." *State v. Goddard,* 649 S.W.2d 882, 889 (Mo. banc 1983).

Previous appellate court cases dealing with a challenge to the sufficiency of the evidence adduced at trial to prove the crime as charged in the information and indictment, while informative, are distinguishable from the current case.

In *State v. Sexton,* the defendant argued that the evidence was insufficient to prove that the acts of sodomy occurred within the time frame alleged in the information. 929 S.W.2d 909, 917 (Mo.App.1996). The amended information and instructions in the case specified a time period between September 1, 1990, through February 12, 1991. *Id.* The evidence at trial was sufficient to prove that the various acts of sodomy occurred continually beginning in 1987 and continued until the victim reported them to the police in 1992. *Id.* The evidence included evidence tending to show acts of sodomy well within the period specified in the amended information. *Id.*

In *State v. Schaal,* the defendant asserted that the evidence at trial did not prove, beyond a reasonable doubt, that the crimes occurred between October 1, 1986, and November 15, 1986, as charged in the amended information. 83 S.W.3d 659, 662 (Mo.App.2002). However, the evidence at trial was sufficient for a jury to find that the crime occurred between those dates by circumstantial evidence, and the defendant also argued that the time specified in the amended information was an essential element of the crime.

---

**5.** Further, Rule 23.08 provides that any "information may be amended or an information may be substituted for an indictment at any time before verdict or finding if" "[n]o additional or different offense is charged, and"

"[a] defendant's substantial rights are not thereby prejudiced." The state did not seek to amend these charges prior to submission to the jury.

In *State v. Gaines,* the defendant argued that neither victim who testified at trial on behalf of the state testified about specific dates on which their abuse occurred. 316 S.W.3d 440, 452–53 (Mo.App.2010). There was no indication in the opinion as to whether the defendant's sufficiency of the evidence challenge also indicated that the evidence at trial did not support any period of time specified in the charging document. *Id.* at 454.

In *State v. Bunch,* the defendant argued that the state did not prove beyond a reasonable doubt that the crime occurred within the six-week period charged in the information. 289 S.W.3d 701 (Mo.App. 2009). The evidence was that the victim lived with the defendant within the six-month period included in the information and that the abuse occurred while the defendant lived with the victim, which was circumstantial evidence that the abuse occurred well within that period of time included in the information. *Id.* at 703–04.

 In this case, the most favorable evidence at trial to support the conviction of the acts with which Miller was charged in counts III and V, and on which the jury was instructed in Instruction Nos. 7 and 9, was a timeframe six years prior. "It is axiomatic that a conviction upon a charge not made or upon a charge not tried constitutes a denial of due process." *Jackson v. Virginia,* 443 U.S. 307, 314, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "[A] person cannot incur the loss of liberty for an offense without notice and a meaningful opportunity to defend." *Id.* "The fundamental test of the sufficiency of an information is whether or not it states the essential elements of the offense charged so that the defendant is adequately informed of the charge against him and the final disposition of the charge will constitute a bar to further prosecution for the same offense." *State v. Mitchell,* 611

S.W.2d 223 (Mo. banc 1981) (internal quotations and citations omitted). "[D]ue process requires that a defendant may not be convicted of an offense not charged in the information or indictment." *State v. Smith,* 592 S.W.2d 165, 165 (Mo. banc 1979) (citing *State v. Billingsley,* 465 S.W.2d 569 (Mo.1971)). "An instruction that allows them to convict of that act or another which is not charged cannot stand." *State v. Pope,* 733 S.W.2d 811, 812 (Mo.App.1987). The State is required to prove the elements of the offense it charged, not the one it might have charged. *State v. Payne,* 250 S.W.3d 815, 818 n. 3 (Mo.App.2008); *State v. Price,* 980 S.W.2d 143, 144 (Mo.App.1998); *State v. Keeler,* 856 S.W.2d 928, 929 (Mo.App.1993); *State v. Palmer,* 822 S.W.2d 536, 541 (Mo. App.1992); *State v. Edsall,* 781 S.W.2d 561, 564 (Mo.App.1989).

### Analysis

The information and verdict directing jury instruction in this case for counts III and V charged Miller with, and required the jury to find specifically, that, *between December 3, 2004, and December 3, 2005,* Miller "put his finger in E.N.M.'s vagina." (Emphasis added). The only evidence presented by the State at trial tending to prove the specific conduct included in the instruction was limited to when E.N.M. was 7 years old, or between December 3, 1998, and December 3, 1999. The State could have charged Miller with two counts of first-degree statutory sodomy: one between the dates of December 3, 1998, and December 3, 1999, for the act of "put[ting] his finger in E.N.M.'s vagina," and the State could have charged Miller with another count between the dates of December 3, 2004, and December 3, 2005, for "the penetration, however, slight, of the male or female sex organ or the anus by a finger, instrument or object."

 If his convictions on counts III and V are allowed to stand based on this record, nothing would preclude the State, in the future, from charging Miller with separate first-degree statutory sodomy and deviate sexual assault charges arising out of the same offense (digital insertion occurring between December 3, 1998, through December 3, 1999). It would be a violation of the United States and Missouri constitutions for this Court to allow the State that opportunity by affirming the convictions for counts III and V.[6]

 When time is not an element of the offense, but the State includes a time period in the information and mirroring instructions, the time period included in the information and mirroring instructions implicate a defendant's double jeopardy rights and preclude the State from using evidence of the uncharged offense to prove the separate charged offense at trial. If it were otherwise, the State may simply charge a defendant with one offense, listing year X in the information and instructions, put on evidence of acts committed in year Y, and if not satisfied with the defendant's acquittal or sentence after conviction in that trial, the State may then charge a defendant with two more offenses, listing years Y and Z in the information and instructions, put on the very same evidence it used in the previous trial,

and gain convictions for both charges because the act in year Y occurred "before the date of the information and within the period of limitation." *See, e.g., State v. Cannafax*, 344 S.W.3d 279, 287 (Mo.App. 2011).

 "The double jeopardy clause precludes remand for a second trial when a conviction is reversed because the evidence introduced at the first trial was legally insufficient." *State v. Self*, 155 S.W.3d 756, 764 (Mo. banc 2005) (citing *Burks v. U.S.*, 437 U.S. 1, 18, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)). There was insufficient evidence Miller committed the charged offenses of first-degree statutory sodomy and deviate sexual assault during the charged period of December 3, 2004, through December 3, 2005. Miller's convictions under counts III and V are reversed, and the cause is remanded for entry of a judgment of acquittal on those counts.[7]

### Evidence of Sexual Misconduct Involving a Child

 Miller argues that the evidence was insufficient to support his conviction of sexual misconduct involving a child. As charged, the State had to prove that Miller "knowingly exposed his genitals" to E.N.M., who was younger than 14 years

---

6. "The [double jeopardy] clause contains two distinct protections for criminal defendants: (a) protection from successive prosecutions for the same offense after either an acquittal or a conviction and (b) protection from multiple punishments for the same offense. The protection applies only to multiple punishments for the same offense. Multiple convictions are permissible if the defendant has in law and in fact committed separate crimes." *State v. Flenoy*, 968 S.W.2d 141, 144 (Mo. banc 1998) (internal citations and quotations omitted). In *Miller's* case, double jeopardy protects him from being subject to conviction for first-degree statutory sodomy and deviate sexual assault twice, one for the period 2004

to 2005, the other for the period 1998 to 1999, for the single offense the evidence at trial alleged he committed in the period 1998 to 1999.

7. This Court notes that, even though the evidence was insufficient to convict Miller of first-degree statutory sodomy and deviate sexual assault for the period of the charged offense, December 3, 2004, and December 3, 2005, Miller's right to preclusion from double jeopardy does not also attach to the separate uncharged offense for the period December 3, 1998, and December 3, 1999.

old, for the purpose of arousing or gratifying the sexual desire of any person. Section 566.083.1(2). The charging information and Instruction No. 10, both listed "between December 3, 1997, and December 3, 1998," when E.N.M. was 6 years old, as the relevant time period for the commission of acts constituting the crime.

Evidence adduced at trial was sufficient to support Miller's conviction for sexual misconduct involving a child. E.N.M. testified that she turned her head and saw Miller had gotten behind her on the loveseat. She testified that Miller pulled down her shorts, pulled down his shorts, and "stuck his penis in between [her] legs." A rational finder of fact could have found this testimony credible and inferred that E.N.M. saw Miller's penis when he pulled down his shorts and placed it between her legs. Furthermore, E.N.M. testified that, when she was 6 years old, Miller made her put his penis in her mouth and perform oral sex on numerous occasions. A rational finder of fact could have concluded that Miller exposed his penis to E.N.M. on those occasions and that she saw his penis as he forced her to put it in her mouth. Miller's conviction for sexual misconduct involving a child is affirmed.

### Evidence of First Degree Endangering the Welfare of a Child

Miller argues that the evidence was insufficient to support his conviction of first-degree endangering the welfare of a child. The State had to prove that Miller engaged in "sexual contact" with E.N.M. between December 3, 2004, and December 3, 2005, that E.N.M. was younger than 17 years old, that Miller was E.N.M.'s parent, and that Miller acted knowingly. Section 568.045.1(2), RSMo Supp.2005.

Miller argues that, while there was evidence at trial that he engaged in "sexual intercourse" and "deviate sexual inter-course" with E.N.M. during the charged time period, because his conduct met the definition of those terms it could not also meet the definition of "sexual contact" as required under the statute for conviction for first-degree endangering the welfare of a child. Miller claims that "sexual conduct" includes "sexual intercourse, deviate sexual intercourse or sexual contact" and argues that because "sexual contact" is defined separately under the statute, the types of conduct constituting the acts of "sexual intercourse, deviate sexual intercourse," and "sexual contact" are of necessity different and mutually exclusive to one another. Miller claims that, because "sexual contact" did not incorporate the definitions of "sexual intercourse" and "deviate sexual intercourse," the legislature chose not to include them under the definition of "sexual contact." Miller further argues that, because the State introduced proof of only "sexual intercourse" and "deviate sexual intercourse" and did not charge Miller with those acts in instructing the jury for first-degree endangerment of the welfare of a child, there was insufficient evidence of his conduct constituting merely "sexual contact."

Section 566.010(3), RSMo Supp.2005, defined "[s]exual contact" as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person[.]" "Sexual intercourse" was defined as "any penetration, however slight, of the female organ with the male sex organ[.]" Section 566.010(4), RSMo Supp.2005. "Deviate sexual intercourse" was defined as "any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex

organ or the anus[.]" Section 566.010(1), RSMo Supp.2005. The statute's language is plain and not ambiguous. A person cannot engage in "sexual intercourse" or "deviate sexual intercourse" with another person without one of those persons engaging in "sexual contact" because the former acts involve the "touching of another person with the genitals" and "touching of the genitals or anus of another person, or the breast of a female person" Section 566.010(3), RSMo Supp.2005.

"When a defendant disputes the sufficiency of the evidence to prove sexual contact as an element of sexual abuse, the issue is whether there is at least a reasonable inference that there was the touching of the genitals or anus of any person or the breast of a female." *State v. Wilkins,* 872 S.W.2d 142, 145 (Mo.App. 1994). "When a person violates more than one criminal statute, it is within the prosecutor's discretion to determine the statute or statutes under which the prosecutor desires to proceed." *State v. Hendricks,* 944 S.W.2d 208, 211 (Mo. banc 1997) (internal quotations and citations omitted). E.N.M. testified that Miller repeatedly engaged in sexual intercourse with her between December 3, 2004, and December 3, 2005, when she was 13 years old and that Miller occasionally engaged in anal intercourse with her. Either of these acts necessarily involved Miller "touching another person with [his] genitals." A reasonable jury could have inferred from the evidence that Miller's conduct constituted "sexual contact" as defined under § 566.010(3), RSMo Supp.2005. Miller's conviction for first-degree endangerment of the welfare of a child is affirmed.

## SUBMITTING INSTRUCTION NO. 8 CONSTITUTED PLAIN ERROR

Miller argues that the circuit court erred in submitting Instruction No. 8, a verdict director relating to the charge of first-degree child molestation. Miller argues that the evidence was insufficient to support his conviction under first-degree child molestation because it failed to prove all elements of the crime beyond a reasonable doubt. Miller also argues that the circuit court committed plain error in submitting Instruction No. 8 in that it violated the *ex post facto* clauses of the United States and Missouri constitutions. Because this Court finds that the circuit court erred in submitting Instruction No. 8, reverses Miller's conviction of first-degree child molestation, and remands for a new trial, Miller's *ex post facto* argument need not be addressed.

The circuit court gave the jury Instruction No. 8, a verdict director that read:

As to Count 4, if you find and believe from the evidence beyond a reasonable doubt:

First, that between December 3, 1997 and December 3, 1998, in the County of Harrison, State of Missouri, the defendant touched the genitals of E.N.M. through the clothing, and

Second, that he did so for the purpose of arousing his own sexual desire, and

Third, that E.N.M. was then less than fourteen years old, then you will find the defendant guilty under Count 4 of child molestation in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

"Instructional error constitutes plain error when it is clear the trial court so misdirected or failed to instruct the jury so that it is apparent the error affected the verdict." *State v. Beeler,* 12 S.W.3d 294, 300 (Mo. banc 2000).

 Miller was charged with first-degree child molestation in count IV, between the dates of December 3, 1997, and December 3, 1998. At that time, first-degree child molestation was defined as follows: "A person commits the crime of child molestation in the first degree if he subjects another person who is less than twelve years of age to sexual contact." Section 566.067, RSMo 1994. At that time, "sexual contact" meant "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, for the purpose of arousing or gratifying sexual desire of any person[.]" Section 566.010(3), RSMo 1994. During the period for which Miller was charged with first-degree child molestation, "sexual contact" as defined by the applicable statute did not include touching through the clothing. That specific manner of engaging in sexual contact was not added to the definition of "sexual contact" until 2002. *See* § 566.010(3), RSMo Supp.2002. Because the circuit court submitted a verdict director to the jury allowing the jury to find Miller guilty of the crime of first-degree child molestation for an act that was not criminal during the charged period, it committed plain error that affected the jury's verdict.[8]

Miller's conviction for first-degree child molestation under count IV is reversed, and the case is remanded.

## EVIDENCE OF POST–ARREST SILENCE AT TRIAL

Miller asserts that the State improperly commented on his post-arrest, post-*Miranda* silence when the state presented, and commented on, evidence that Miller did not "volunteer an exculpatory explanation for some of the charges after he had received *Miranda* warnings." Miller relies on *Doyle v. Ohio*, 426 U.S. 610, 619–20, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), which held that a state prosecutor's "use for impeachment purposes of petitioner['s] silence, at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process clause of the Fourteenth Amendment."

 Even assuming this post-*Miranda* silence was used at trial to show that Miller had recently fabricated his defense to counts I, II, and VII, all of these charges were alleged to have occurred on January 21 and January 22, 2006. Miller was found not guilty by the jury on all three of those charges. Therefore, there was no manifest injustice or miscarriage of justice.

## PRECLUSION OF DEFENSE WITNESS SHENBURGER[9] AT TRIAL

Miller argues that the circuit court erred in sustaining the prosecution's objec-

8. Because Miller's conviction under count IV is "reversed solely due to trial error, then retrial is constitutionally permissible." *State v. Wood*, 596 S.W.2d 394, 398 (Mo. banc 1980) (citing *Burks*, 437 U.S. at 11, 98 S.Ct. 2141) ("The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding"). In Miller's case, because the evidence adduced at trial was sufficient to have found him guilty of first-degree child molestation under a correct jury instruction

and is reversed solely due to trial error for an incorrect jury instruction, remand for a new trial on count IV does not violate the double jeopardy protections under the Missouri or United States constitutions.

9. There was some discrepancy over Mr. Shenburger's name at trial. His name was spelled out in the transcript by both the defendant's counsel and the court as "S–H–E–N–B–U–R–G–E–R" and then "S–H–E–N–B–E–R–G–E–R," and the prosecution referred to him as "Don something or another," "Don whatever his name," and "a Don somebody." Because

tion and precluding defense witness Don Shenburger from testifying at trial as a discovery sanction because Shenburger was not timely or formally endorsed as a witness by defense counsel. Miller argues that the prosecutor already had notice regarding the substance of Shenburger's testimony and was not sufficiently prejudiced to justify such a severe discovery sanction.

## Standard of Review

The exclusion of evidence as a sanction for violation of discovery rules is an area left to trial court discretion. *State v. Walkup*, 220 S.W.3d 748, 757 (Mo. banc 2007). "The sanction is used sparingly against a defendant in a criminal case because of the trial court's duty to ensure a fair trial by allowing the defendant to put on a defense." *Id.* A defendant in a criminal case has a constitutional right to present a complete defense. *Id.* (citing *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)). When it comes to applying evidentiary principles or rules, the erroneous exclusion of evidence in a criminal case creates a rebuttable presumption of prejudice. *Id.* (citing *Burton v. State*, 641 S.W.2d 95, 99 (Mo. banc 1982); *State v. Rhodes*, 988 S.W.2d 521, 529 (Mo. banc 1999)). The state may rebut this presumption by proving that the error was harmless beyond a reasonable doubt. *Id.* Trial court error in the admission of evidence is prejudicial if the error so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion without the error. *Walkup*, 220 S.W.3d at 757 (citing *State v. Roberts*, 948 S.W.2d 577, 592 (Mo. banc 1997)). "As a matter of law,

no abuse of discretion exists when the court refuses to allow the late endorsement of a defense witness whose testimony would have been cumulative, collateral, or if the late endorsement would have unfairly surprised the State." *State v. Hopper*, 315 S.W.3d 361, 367 (Mo.App.2010); *State v. Williams*, 853 S.W.2d 371, 373–74 (Mo. App.1993).

## Excluding Witness Shenburger Did Not Result in Prejudice to Miller

The circuit court excluded Shenburger's testimony as a sanction for Miller's failure to endorse the witness properly. At trial, the prosecutor objected to the late endorsement and argued that the State had not been made aware of the witness or been given any means of contacting the witness. Miller argues that the complete exclusion of Shenburger's testimony was an extreme remedy that was presumptively prejudicial to him. Miller argues that Shenburger's testimony not only would have corroborated his activities on January 21 and 22, 2006, but also would have cast doubts on E.N.M.'s credibility as to evidence supporting all of the other counts with which Miller was charged.

The circuit court allowed Shenburger's testimony for purposes of an offer of proof. Shenburger's testimony merely would have tended to prove that Miller did not engage in sexual intercourse with E.N.M. on January 21 and 22, 2006. Shenburger's testimony would have been cumulative to testimony presented by the defense from Miller and Christopher Miller regarding the activities on the farm during that weekend. Miller was acquitted of all counts for which Shenburger's testimony of the events of January 21 and 22, 2006 were relevant, and can demon-

Shenburger was a witness for the defense, this Court will use the spelling provided by Miller's counsel.

strate no prejudice for Shenburger's exclusion. Shenburger's testimony in this regard would not have further impeached E.N.M.'s credibility because the jury already chose not to find her testimony credible to convict Miller on these counts. The circuit court did not abuse its discretion by excluding Shenburger's testimony at trial.

## EVIDENCE OF UNCHARGED BAD ACTS

 Miller argues that the circuit court committed error in allowing the prosecutor to introduce evidence of uncharged crimes. Miller argues that the prosecutor introduced evidence that Miller physically abused members of his household and that the prosecutor improperly suggested that Miller committed fraud against the federal government for "receiving benefits to which he was not legally entitled." Miller objected to the introduction of evidence about physical abuse against members of his household and also included this claim in his motion for new trial. This part of Miller's claim was preserved for appellate review. However, aside from the general objection that the prosecutor's question was argumentative, Miller did not object to the introduction of evidence regarding disability checks, such a claim was not included in Miller's motion for new trial and, therefore, it was not preserved for appellate review.

### Standard of Review

 Because Miller properly preserved the claim of error regarding the admission of evidence of physical abuse against his family introduced by the prosecutor, this claim is reviewed for abuse of discretion. *State v. Taylor*, 298 S.W.3d 482, 491 (Mo. banc 2009). "The admission of evidence is reviewed for abuse of discretion and disturbed only when the decision

is clearly against the logic of the circumstances." *Id.* Miller's claim of error regarding the introduction of evidence that he accepted improper disability payments, however, is reviewed for "plain error, if the error resulted in manifest injustice or a miscarriage of justice." *Id.* "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." *State v. Forrest*, 183 S.W.3d 218, 224 (Mo. banc 2006).

### Admission of Evidence of Physical Abuse Against Miller's Family

On direct examination, E.N.M. testified that she did not tell anyone what had happened when the sexual abuse started because she "was too afraid." She claimed that her fear resulted from the fact that Miller had been "hitting [her] mom" on "many occasions" and that sometimes Miller would hit her brothers. The circuit court allowed the testimony concerning Miller's physical abuse because it found such testimony relevant to why E.N.M. had not come forward to report the abuse sooner. The circuit court limited the testimony of E.N.M. to instances of physical abuse that she herself "saw and observed."

 "Evidence of prior uncharged misconduct is inadmissible for the sole purpose of showing the propensity of the defendant to commit such acts." *State v. Gilyard*, 979 S.W.2d 138, 140 (Mo. banc 1998). There are several exceptions under which otherwise inadmissible evidence may be admitted. "Such evidence may be admissible if it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; or (5) the identity of the person charged with commission of the crime on trial." *State v.*

*Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011). "In addition, evidence of uncharged crimes that are part of the circumstances or the sequence of events surrounding the offense charged may be admissible 'to present a complete and coherent picture of the events that transpired.'" *Id.* (internal citation omitted). "This balancing of prejudicial effect and probative value lies within the sound discretion of the trial court." *State v. Mallett*, 732 S.W.2d 527, 534 (Mo. banc 1987).

At trial, E.N.M. testified that Miller physically abused both her mother and brothers on occasion. The rationale the circuit court gave for allowing the evidence of these uncharged crimes of physical abuse was that, because E.N.M.'s credibility was being called into question as a central factor in Miller's defense, such evidence was relevant to show why E.N.M. did not come forward with the allegations sooner than she did. The testimony involving prior uncharged crimes was introduced on direct testimony to combat perceived forthcoming attacks on the credibility of Miller's victim.

█ This evidence, while not introduced for the purpose of proving Miller's propensity to commit the crime for which he is on trial, still must meet a recognized exception to the rule against admissibility of evidence of uncharged crimes. The evidence of physical abuse toward E.N.M.'s mother and brothers does tend to give a "complete and coherent picture of the events that transpired," more specifically why E.N.M. did not speak up earlier about the abuse that had been going on for eight years. There was no mention of this testimony during closing argument, and the only reference to it in the prosecutor's opening statement was a vague reference to the fear E.N.M. felt toward Miller.

█ Evidence of prior bad acts may be admissible to explain a witness's delay in reporting a matter to the police. *Primm*, 347 S.W.3d at 71. In *Primm*, evidence was adduced at trial that the victim was given marijuana by her abuser "in order to dissuade her from disclosing the abuse." *Id.* Such evidence of uncharged crimes may be "admissible to show the circumstances surrounding the offenses charged and to provide a more complete picture of the crimes" and was held not to constitute an abuse of discretion. *Id.* The testimony of prior uncharged physical abuse in this case was limited to instances of E.N.M.'s personal knowledge and established why E.N.M. did not report the abuse sooner, described the circumstances surrounding the abuse by giving the jury a better overall picture of the relationship between E.N.M. and Miller during the instances of sexual abuse for which he was charged, and helped explain how it was possible for the abuse to go undetected by other members of the family. The circuit court did not abuse its discretion in admitting E.N.M.'s testimony about abuse.

### Admission of Evidence of Improper Acceptance of Disability Payments

█ Miller did not object at trial to evidence of his improper acceptance of disability payments and so his claim is reviewed for plain error. Miller, however, provided testimony on direct examination as part of his defense regarding his acceptance of disability payments after he was no longer disabled and claimed that he had tried to go off of disability but that he was kept on the program for close to three years. "The complaining party cannot be prejudiced by the allegedly inadmissible evidence if that party offers evidence to the same effect as the challenged evidence[.]" *Dunn v. St. Louis–San Francisco Ry. Co.*, 621 S.W.2d 245, 252 (Mo. banc 1981); *State v. Cummings*, 134 S.W.3d 94,

103 (Mo.App.2004); *State v. Myers*, 997 S.W.2d 26, 35 (Mo.App.1999); *State v. Schwendt*, 645 S.W.2d 385, 387 (Mo.App. 1983). The admission of evidence regarding Miller's disability payments after he no longer was disabled did not constitute plain error.

## ARGUMENT OF FACTS NOT IN EVIDENCE AT TRIAL

 Miller argues that the circuit court committed plain error in failing to declare a mistrial, *sua sponte*, when the prosecutor argued facts not in evidence at trial during closing argument regarding the purported temperature at the scene of the alleged crimes on the dates of January 21 and 22, 2006. Miller claims that these arguments were calculated to prejudice him by undermining his credibility in violation of the due process clauses of the United States and Missouri constitutions. Because Miller did not include this issue in the motion for new trial, this Court reviews the claim for plain error under Rule 30.20.

 The State, during closing argument, may not argue facts outside the record because such arguments amount to unsworn testimony by the prosecutor that is not subject to cross-examination. *State v. Storey*, 901 S.W.2d 886, 900–01 (Mo. banc 1995). It is improper for the prosecutor to express opinions implying awareness of facts not available for the jury's consideration. *State v. Moore*, 428 S.W.2d 563, 565 (Mo.1968). However, a closing "argument does not require reversal unless it amounts to prejudicial error." *State v. Edwards*, 116 S.W.3d 511, 537 (Mo. banc 2003). "A conviction will be reversed based on plain error in closing argument only when it is established that the argument had a decisive effect on the outcome of the trial and amounts to manifest injustice." *Id.* at 536–37.

 At trial, the prosecutor attempted to cross-examine Miller regarding the temperature during the weekend of January 21 and 22, 2006. Miller objected, and the circuit court sustained that objection because the prosecution did not present any admissible evidence regarding the actual temperature on Miller's farm during that time period. During closing argument, the prosecutor stated:

> You have to wonder about [Miller's] testimony in general and the honesty of his testimony. He doesn't remember a lot of dates, but boy gosh he does remember that they were there January 21st and 22nd fencing. And he also testified that it was like 50 or 60 degrees that day. He remembers that. He was quite, quite certain that it was very warm that day until the question about whether or not there was 12 miles away, you know, in Lamoni, Iowa it was quite a bit colder that day. It's a January day and he said it was like 50 or 60 and he's quite certain about that. But when I questioned about that, about the temperature in Lamoni, Iowa that day all of a sudden he says well, um, well, he was wearing a lot of coveralls that day. Oh, um, there were a lot of brushfires along the fence that day. No, his hands weren't cold. He wasn't wearing gloves. He didn't notice the cold on his hands. He's stringing fence wire in bare hands in a cold, cold day and he's not noticing the cold.

The prosecutor's argument referred to the outside temperature on January 21 and 22, 2006. Miller was acquitted of all of the charges for which those dates were relevant. This Court finds that Miller was not prejudiced by the prosecutor's statements.

## CUMULATIVE EFFECT OF ERRORS AT TRIAL

Miller argues that the cumulative effect of errors at trial deprived him of a fair

trial in violation of his due process rights under the United States and Missouri constitutions.

"A defendant is entitled to a fair trial, not a perfect one." *State v. Keeble,* 427 S.W.2d 404, 408 (Mo.1968). "This Court has rejected such a 'cumulative error' theory, stating that 'Numerous non-errors cannot add up to error.'" *State v. Gray,* 887 S.W.2d 369, 374 (Mo. banc 1994) (internal citations omitted).

### Conclusion

For the reasons set forth, the circuit court's judgment is affirmed in part, reversed in part, and the case is remanded.

All concur.

