**STATE of Missouri, Respondent,**

v.

**D'Andre WHITLEY, Appellant.**

**No. ED 98812.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 17, 2013.

G. Michael Archer, St. Louis, MO, for appellant.

Chris Koster, Jennifer Rodewald, Jefferson City, MO, for respondent.

GARY M. GAERTNER, JR., Judge.

*Introduction*

D'Andre Whitley (Appellant) appeals his convictions by jury of assault in the first degree, burglary, and two counts of armed criminal action. Appellant challenges the trial court's denial of Appellant's proffered instruction on the lesser-included offense of assault in the second degree, as well as the sufficiency of the evidence to support his conviction for burglary. We affirm.

## Background

The evidence at trial to support Appellant's convictions was as follows. Appellant was out at a night club with his friends Kelvin Nelson (Victim), Russell Vincent (Vincent), Robert Turner (Turner), and Jarrell Jones (Jones). Around 1:30 a.m., they decided to leave and go to Vincent's house. Once they arrived, they began playing a game of dice for money. They played for about an hour, during which Victim and Appellant began taunting each other.

After about 20 minutes of this taunting, Appellant became angry and got up from the table. Victim followed him, and they began to "tussle" on the front porch. They fell off the front porch, and Victim pinned Appellant to the ground. Appellant asked Victim to let him go, but Victim did not let Appellant go immediately. Victim was a bigger man than Appellant, and Appellant could not get away. Their friends tried to break up their tussle, and Victim let Appellant up. Appellant said to Victim, "[y]ou're a dead [man]," and got into his car and drove away. Victim returned inside the house with his friends and went to the kitchen.

At some point, Turner went out to the front porch to talk on his phone. About ten minutes later, Turner saw Appellant speed around a corner in his car and park in front of the house. Turner saw Appellant get out of the car, and Appellant fired a gunshot at the house. Turner ran back into the house, slammed the door, and locked it. He yelled to his friends in the kitchen that Appellant was outside shooting.

Victim walked toward the front of the house, and as he was doing so, Appellant kicked open the front door. Appellant came into the house holding a 9–millimeter handgun with an extended clip. Victim made eye contact with Appellant and saw Appellant point the gun at him. Victim tried to take cover as Appellant pulled the trigger several times. Victim took cover behind a wall in the kitchen. He heard a pause in the shots and looked out, and then Appellant began shooting again. The second time Victim heard a pause in the shooting, he tried to look out and tripped, falling out from behind the wall. Appellant fired several shots, hitting Victim once in the arm and once in the stomach. Appellant then fired two more times and ran out the door.

Victim suffered broken bones in his arm and a collapsed lung as a result of his gunshot wounds. He had surgery to remove a bullet lodged in his shoulder blade. When interviewed by the police, Victim identified Appellant as the shooter, and Victim picked Appellant's photograph from a photographic lineup. Jones also identified Appellant as the shooter from a photographic lineup.

At the close of the evidence, Appellant's counsel submitted a verdict-directing instruction to the trial court for assault in the second degree, requesting the court give the instruction as a lesser-included offense of assault in the first degree. The difference between the two verdict directors was that the jury could find that Appellant acted under the influence of sudden passion, and in that case, convict him of second-degree assault rather than first-degree. The trial court denied counsel's request, finding that in light of the evidence, the issue of sudden passion was "not properly in [Appellant's] case."

The jury found Appellant guilty of first-degree assault, first-degree burglary, and two counts of armed criminal action. The trial court sentenced Appellant to a total of twenty years' imprisonment. This appeal follows.

## Discussion

### Point I

Appellant argues the trial court erred in denying his request to submit an instruction to the jury for second-degree assault as a lesser-included offense of first-degree assault, because there was evidence from which the jury could have found he was acting under the influence of sudden passion arising from adequate cause. We disagree.[1]

### Standard of Review

In determining whether Appellant was entitled to an instruction on a lesser-included offense, we review the evidence in the light most favorable to Appellant. *See State v. Crenshaw,* 14 S.W.3d 175, 177 (Mo.App.E.D.2000). A trial court is required to grant the defendant's request for a lesser-included instruction when the evidence "provides a basis for both an acquittal of the greater offense and a conviction of the lesser offense." *State v. Hahn,* 37 S.W.3d 344, 348 (Mo. App.W.D.2000). In such a case, error results if the trial court does not give the instruction, and that error is presumed prejudicial. *Id.*

### Analysis

Here, the legal basis for acquitting Appellant of first-degree assault but convicting him of second-degree assault was a finding that Appellant acted under the influence of a sudden passion arising from adequate cause. Section 565.060.1(1), RSMo. (Supp.2012).[2] "Sudden passion" is defined as "passion directly caused by and arising out of provocation by the victim ... aris[ing] at the time of the offense and ... not solely the result of former provocation." Section 565.002(7). "Adequate cause" is "cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control." Section 565.002(1). A sudden passion arises after provocation, at which time the defendant immediately commits the offense. *See State v. Boyd,* 913 S.W.2d 838, 842 (Mo. App.E.D.1995). If there has been time for the passion to cool, the offense is not committed under the influence of a sudden passion. *Id.*

Viewing the evidence in the light most favorable to Appellant, we find no evidence from which the jury could conclude Appellant acted under the influence of a sudden passion arising from adequate cause, as defined above. Appellant was indeed provoked by Victim when Victim pinned Appellant to the ground and held him there. However, Appellant then left the house, returning a minimum of ten minutes later with a gun. Rather than shooting Victim in direct response to provocation, Appellant chose to leave, retrieve a gun, and return; thus, allowing time for any passion to cool. *See id.* at 844 (finding no sudden passion when after fight between appellant and victim, appellant went into his house next door, retrieved gun, returned moments later and shot victim).

---

1. We note that the State identifies various deficiencies in the form of Appellant's point on appeal and the copies of Appellant's proffered instructions in the legal file on appeal. We agree with the State regarding these deficiencies, but because we are able to discern Appellant's argument despite them, and because the State had the opportunity to brief a response to this argument, we consider the merits. *See Walker v. Gateway Nat. Bank,* 799 S.W.2d 614, 616–17 (Mo.App.E.D.1990) (exercising discretion to review deficient point on merits where argument discernible and respondent able to brief issue).

2. All statutory references are to RSMo. (Supp. 2012), unless otherwise indicated.

Because there was no evidence from which the jury could find Appellant acted under the influence of a sudden passion, the trial court did not err in denying Appellant's request that the jury be instructed on second-degree assault as a lesser-included offense on the count of first-degree assault. Point denied.

### Point II

Appellant argues that the trial court erred in denying his motions for acquittal both at the close of the State's case and at the close of the evidence, because as it relates to the count of first-degree burglary, Appellant argues the State failed to prove he entered Vincent's house unlawfully. We disagree.

### Standard of Review

When a defendant challenges the sufficiency of the evidence to support a conviction, we review the evidence in the light most favorable to the State. *State v. Grim*, 854 S.W.2d 403, 411 (Mo. banc 1993). The sole issue here is whether there is sufficient evidence from which the jury could have found the elements of first-degree burglary beyond a reasonable doubt. *See id.*

### Analysis

█ The only element of first-degree burglary that Appellant disputes on appeal is the element requiring the jury to find that Appellant "enter[ed] unlawfully or knowingly remain[ed] unlawfully" in Vincent's house. Section 569.160.1. "An unlawful entry occurs when a person enters without the license or privilege to do so." *State v. Oropeza*, 735 S.W.2d 2, 5 (Mo.App. W.D.1987).

Appellant argues the evidence established that Vincent and Appellant were friends, and Appellant had license to come and go into Vincent's house as he pleased.

He points out that he was in Vincent's house with permission earlier in the evening playing a game of dice, and that no one testified he did not have permission to return. Appellant argues the State therefore failed to introduce any evidence showing that Appellant was present in Vincent's house unlawfully.

However, we find there was sufficient evidence showing that when Appellant returned to the house later with a gun, he entered the house unlawfully. Appellant shot at the house before entering, causing Turner to run inside and lock the door. Appellant kicked the door open and fired several shots as he did so, having earlier made a threat to Victim. Under these circumstances, any license or privilege Appellant previously may have had to enter the house had undoubtedly been extinguished. *See State v. McGinnis*, 317 S.W.3d 685, 687–88 (Mo.App.W.D.2010) (finding defendant's longstanding permission to enter home of friends extinguished when he entered after midnight, went directly to victim's bedroom, and lied about where her husband was in order to gain access to rape her; finding defendant knew if he had been truthful about fact that defendant had killed husband, he would not have been welcome in home); *cf. Oropeza*, 735 S.W.2d at 5 (defendant's entry through alley employee entrance and attempt to conceal entry not indicative of someone entering for lawful purpose).

The State presented sufficient evidence from which the jury could conclude Appellant entered Vincent's house unlawfully. Point denied.

### Point III

█ In his final point, Appellant argues that the trial court plainly erred in failing to grant the State's motion to disqualify defense counsel due to a conflict of interest. The State's motion alleged that Ap-

pellant's counsel had previously represented Victim in defense of criminal charges, thus creating a conflict of interest. Appellant did not affirmatively consent to his attorney's continued representation in light of the State's alleged conflict, but Appellant did not join the motion or give any indication that he wished to have his counsel removed. Appellant's counsel did not recuse himself. The court denied the State's motion to disqualify Appellant's counsel.

Appellant now argues he was prejudiced by the court's action, because he was represented by an attorney who had a conflict of interest. Though framed as trial court error, this claim is essentially one for ineffective assistance of counsel. *See State v. Kezer*, 918 S.W.2d 874, 877 (Mo.App.E.D. 1996) (declining to consider similar point framed as trial error when in effect was claim of ineffective assistance of counsel). As such, it is not cognizable here, but rather is properly raised in a motion for post-conviction relief. *Id.*

To the extent Appellant alleges plain error on the part of the trial court for failing to grant the State's motion despite Appellant's silence in response to the motion, his argument on this point does not facially establish substantial grounds for believing a manifest injustice or miscarriage of justice has occurred. Thus, we decline to review it.[3] *See State v. White*, 247 S.W.3d 557, 561 (Mo.App.E.D.2007) (explaining two-step analysis regarding requests for plain error review). Point denied.

*Conclusion*

The trial court was not required to give the lesser-included instruction because there was no evidence Appellant acted out of a sudden passion arising from adequate cause. The evidence that Appellant fired shots at the house and kicked open the locked door was sufficient to support the jury's conclusion that Appellant entered the house unlawfully, and thus sufficient to support his conviction of first-degree burglary. Appellant's final claim that his counsel was ineffective due to a conflict of interest is not cognizable on direct appeal, and no facial grounds exist to believe the trial court plainly erred in denying the State's motion to disqualify defense counsel. We affirm.

LISA S. VAN AMBURG, P.J. and PATRICIA L. COHEN, J., concurs.

---

3. We note the State argues Appellant has no standing to raise a claim of trial court error, citing *State v. Kezer*, 918 S.W.2d 874 (Mo.App. E.D.1996). There, the appellant had raised the same claim Appellant raises here, but had affirmatively waived any objection to his counsel's representation at trial. *Id.* at 877.

Thus, this Court found he had no standing to raise plain error on appeal. *Id.; see also State v. Stevens*, 949 S.W.2d 257, 259 (Mo. App.S.D.1997) (where defendant affirmatively waives objection at trial, defendant waives review on appeal). In contrast here, the record does not show any affirmative waiver.